## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSUE BENOIT, | ) | 3:20-CV-00717 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SIKORSY AIRCRAFT, | ) | |
| *Defendant*. | ) | August 2, 2022 |

## <u>RULING AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Sarala V. Nagala, United States District Judge.

Plaintiff Josue Benoit ("Plaintiff") has brought this action against Defendant Sikorsky Aircraft ("Defendant") alleging that Defendant discriminated against Plaintiff based on his race, color, and national origin, by refusing to rehire him to a position for which he was qualified and, instead, hiring other candidates that were Caucasian. The complaint contains three counts: (1) discrimination on the basis of race, color, and national origin under the Connecticut Fair Employment Practices Act and Title VII of the Civil Rights Act of 1964; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress.

Presently before the Court is Defendant's motion for summary judgment, which argues that Plaintiff has not demonstrated a *prima facie* case of discrimination and that, even if he could, Defendant had a non-discriminatory, non-pretextual reason for not hiring Plaintiff. Further, Defendant argues that Plaintiff cannot show the type of extreme conduct needed to prove a case of either intentional or negligent infliction of emotional distress. In opposition, Plaintiff argues that there are disputed issues of material fact such that summary judgment is not appropriate.

For the reasons set forth herein, the Court agrees with Defendant and GRANTS the motion for summary judgment.

## I.      FACTUAL BACKGROUND

Defendant supplies "rotary-wing aircraft to all five branches of the U.S. armed forces, along with military and commercial services to operators throughout the world."  Deft's. L.R. 56(a)1 Statement, ECF No. 22-3 ¶ 1.  Most of Defendant's business is done with the United States Department of Defense and other federal government agencies.  *Id.* ¶ 2.

Plaintiff is an African-American male of Haitian national origin.  Compl., ECF No. 1-1 ¶ 3.  In 1999, Plaintiff worked part time at Pratt & Whitney, as part of a co-op program, earning credits to graduate from school.  ECF No. 22-3 ¶¶ 5–6, Pl.'s L.R. 56(a)2 Statement, ECF No. 30 ¶¶ 5-6.  Upon completion of this co-op program, Plaintiff left Pratt & Whitney.  *Id.* ¶ 6.  When he departed, Pratt & Whitney coded him in its human resources management system as "ineligible for rehire."  ECF No. 22-3 ¶ 7.  Because both Pratt & Whitney and Defendant were formerly subsidiaries of United Technologies Corporation, Defendant had access to this information in the human resources system during the relevant time period.  ECF No. 22-3 ¶ 35.  Plaintiff did not know at the time that he had been marked as ineligible for rehire.  Indeed, he maintains that he was not coded as ineligible for rehire.  ECF No. 35, Pl.'s Aff. in Opp. to Summ. J. ¶ 22.[1]

Defendant explains the coding process as follows.  Pratt & Whitney maintains employment records using a software known as "EV5."  ECF No. 22-3 ¶ 8.  In this software, each employee's file contains a section titled "Basic Employment."  *Id.* ¶ 9.  Within this section of the employee's file, there is a box titled "Employee Suitable for Rehire."  *Id.*  In each employee's file, this box is automatically checked.  *Id.* ¶ 10.  In order to designate an employee not suitable for rehire, a Pratt

---

[1] As described further below, in addition to filing his response to Defendant's motion for summary judgment months late, Plaintiff also originally filed an incomplete affidavit, which he offered to correct only after the Court pointed out the error at oral argument.  *See* ECF No. 29-1 at 6.  Plaintiff's belatedly-filed corrected affidavit adds nine and a half paragraphs, for a total of thirty-nine paragraphs.  Despite that Plaintiff neglected to file nearly twenty-five percent of his affidavit in opposition to Defendant's motion for summary judgment until after oral argument took place, the Court has reviewed and considered the updated affidavit in ruling on the present motion, over Defendant's objection.  Even with the new paragraphs, Plaintiff's claims do not survive summary judgment, for the reasons explained herein.

& Whitney employee would need to deliberately uncheck the box.  *Id.*  Where this box has been

unchecked, a previous employee is not eligible to be rehired.  *Id.* ¶ 12.  Defendant states that there

are no records, electronic or otherwise, that detail why or by whom the decision to mark Plaintiff

ineligible for rehire was made.  *Id.* ¶ 13.  Plaintiff, for his part, claims in his affidavit that Pratt &

Whitney does not maintain records in its EV5 system stating that he was ineligible for rehire; that

there is no basic employment tab containing a clickable box labeled "Employee Suitable for

Rehire"; and that that box is not automatically checked for all employees, such that someone would

have deliberately had to uncheck the box for Plaintiff.  ECF No. 30, ¶¶ 8–10.

The parties agree that, between 2006 and 2013, Plaintiff was employed by Butler

International, a staffing firm that assigns contractors to third parties such as Defendant.  ECF No.

22-3 & ECF No. 30 ¶ 14.  While in that position, Plaintiff was assigned exclusively to Defendant.

ECF No. 22-3 & ECF No. 30 ¶ 15.  Defendant contends that the security checks conducted on a

contract employee provided to Defendant through Butler International prior to 2015, when

Defendant was acquired by Lockheed Martin, and those conducted on a prospective contract

employee after 2015, differ in at least one significant way.  ECF No. 22-3 ¶ 16.  Prior to 2015,

Defendant did not check its records to see whether such contractors had been previously employed

by the company and whether they were eligible for rehire as a full-time employee.  *Id.* ¶ 17.  After

2015, potential contractor employees' records were checked in this manner, so that an individual

who was not eligible for rehire as a full-time employee could not provide services to Defendant as

a contract employee.  *Id.* ¶ 18.  Plaintiff disputes these contentions.  ECF No.  30 ¶¶ 16–18.

The facts involving Plaintiff's seeking of employment with Defendant in late 2018 and

early 2019 are undisputed.  Specifically, on December 6, 2018, Jonathan Tierney, a third-party

recruiter, sent Plaintiff an email regarding a job posting to work for Defendant.  ECF No. 22-3 &

ECF No. 30 ¶ 19.  Plaintiff informed Tierney that he was interested in the position and, working with Tierney, applied for the position.  ECF No. 22-3 & ECF No. 30 ¶ 20.  Plaintiff was selected by Defendant to interview for the position, and the interview was scheduled to take place at Defendant's facility on January 16, 2019.  ECF No. 22-3 & ECF No. 30 ¶ 23.  This initial interview was postponed; however, Plaintiff was able to speak to the interviewer, John Flynn, briefly via phone instead.  ECF No. 22-3 & ECF No. 30 ¶ 25.  Flynn informed Plaintiff that he would be a good fit for the position, expressed interest in interviewing Plaintiff, and offered to reschedule the interview.  ECF No. 22-3 & ECF No. 30 ¶¶ 26–27.  Another interview for the position was scheduled for February 28, 2019.  ECF No. 22-3 & ECF No. 30 ¶ 28.

At this point, Defendant states that Flynn attempted to get security approval for Plaintiff to come to Defendant's facility for the interview and encountered difficulty.  ECF No. 30 ¶ 29.  As a result, the second interview had to be postponed.  *Id.*  Plaintiff, on the other hand, states that Flynn had no difficulty obtaining security approval, as Plaintiff had already obtained security clearance.  ECF No. 30 ¶ 29.  Whether for security or other reasons, it is undisputed that this interview was again rescheduled, this time for March 7, 2019.  ECF No. 22-2 at 54:18–23.[2]  The March 7 interview was once again cancelled because, according to Defendant, it was unable to grant Plaintiff security clearance to attend the interview.  ECF No. 22-3 ¶ 31.  At that time, Defendant claims it discovered that the Lockheed Martin visitor management system would not grant Plaintiff access to the facility for an interview because he had been marked ineligible for rehire in the human resources management system.  *Id.* ¶¶ 32–35.  Plaintiff disputes this discovery, instead contending that he had security clearance throughout this process.  ECF No. 30 ¶¶ 32–35.  Defendant acknowledges that Sikorsky itself made no decision regarding Plaintiff's ability to be rehired but

---

[2] Defendant's L.R. 56(a)1 Statement lists this date as March 7, 2021.  The year 2021 appears to be a typographical error, as it is undisputed that the interview was rescheduled for March 7, 2019.

that, because Pratt & Whitney and Sikorsky were both formerly subsidiaries of United Technologies Corporation, and once shared security and human resources information, Plaintiff was "presumably" registered as ineligible for rehire due to Pratt & Whitney's actions. ECF No. 22-3 ¶ 35. Defendant did no further investigation, accepted the systems designation, and ultimately did not interview or hire Plaintiff based, it claims, on his being marked ineligible for rehire in their human resources system. *Id.* ¶ 36.

The parties agree that, after Defendant made the decision not to interview or hire Plaintiff, Tierney, the third-party recruiter, sent Plaintiff an email informing him that Tierney had spoken to an unnamed person in Defendant's human resources department, who relayed that Plaintiff had been "whitelisted which means not eligible to return." *Id.* ¶ 37; ECF No. 30 ¶ 37. Defendant contends that its system does not use the term "whitelist" but, rather, "watch list." ECF No. 22-3 ¶ 38. Plaintiff never heard anyone at Defendant use the term "whitelist," and does not know who allegedly used the term in conversation with Tierney. *Id.* ¶ 39. Yet, Plaintiff contends that the term "whitelist" means "the defendant will not hire him or denied him employment because of his race, color, and national origin." ECF No. 30 ¶ 40. Based on the fact that he allegedly was "whitelisted," Plaintiff filed an administrative charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). ECF No. 22-3 & ECF No. 30 ¶ 41.

On February 5, 2020, the CHRO released jurisdiction over this matter, allowing Plaintiff to bring suit. ECF No. 29-5 at 22. Plaintiff subsequently commenced the present action in state court on April 23, 2020. ECF No. 1-1 at 1. Defendant removed the case to federal court on May 22, 2020. ECF No. 1. The parties proceeded through discovery and, on March 30, 2021, Defendant filed the instant motion for summary judgment. ECF No. 22. Plaintiff filed no

opposition until January 11, 2022, only after the Court reminded Plaintiff that the present motion was pending.  ECF Nos. 24, 28.

As Plaintiff missed the deadline to submit his opposition brief without requesting an extension, the Court must first determine whether it will consider the filing anyway.  In response to the Court's order, Plaintiff filed a request that the Court grant an extension to file his opposition, along with his opposition.  ECF No. 28.  The Court is empowered to extend any deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(B).  In determining whether excusable neglect is present, the Court examines "(1) the danger of prejudice to the [other party], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith."  *Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-1540(VAB), 2015 WL 5194082, at *2 (D. Conn. Sept. 2, 2015).

Initially, it appears to the Court that there is no great risk of prejudice to Defendant were the Court to accept the filing.  In light of the established principle that "even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law," the Court would be required to examine the merits of the motion either way.  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).  Further, Defendant was not required to expend additional resources litigating the case while awaiting Plaintiff's opposition, as discovery was completed and the only thing left, prior to a possible trial, is a decision on the currently pending motion for summary judgment.

Plaintiff contends the sole reason for missing the deadline was inadvertence.  ECF No. 28 at 3.  The Second Circuit has made clear that "mere inadvertence, without more, can in some circumstances be enough to constitute 'excusable neglect' justifying relief under Rule 6(b)(2).

*Raymond v. Int'l Bus. Machs. Corp.*, 148 F.3d 63, 66 (2d Cir. 1998). While the Court does not appreciate litigants who simply miss deadlines for months on end, Plaintiff acted quickly upon being informed by the Court that its opposition was long overdue and filed his opposition within the one-week deadline set by the Court. It thus appears that, although careless, Plaintiff's failure to file his opposition was not done in bad faith, and Plaintiff acted in good faith to remedy the situation as quickly as possible.

Finally, turning to the length of the delay, it is clear that the delay in this case was significant. Given, however, that each of the other factors weighs in favor of considering the opposition, the Court does not believe that even such a significant delay alone is enough to reject Plaintiff's opposition. Thus, in light of the factors set forth above, and the Court's obligation to resolve this summary judgment motion on the merits, the Court will exercise its discretion to consider Plaintiff's belatedly-filed opposition and the supporting papers submitted therewith.

## II.        LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is the moving party's burden to show there are no disputed material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by pointing out an absence of evidence to support the non-moving party's case. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). If the moving party demonstrates there are no disputed issues of material fact, the burden shifts to the non-moving party to rebut this showing through introduction of "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654

F.3d 347, 358 (2d Cir. 2011).  When examining the record, "the court must resolve all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992).  Thus, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

### III.      DISCUSSION

Defendant seeks summary judgment on all three of Plaintiff's claims:  (1) discrimination based on color, race, and national origin; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress.  The Court addresses each below, finding that Defendant is entitled to summary judgment on each claim.

### A.   Count One:  Discrimination Under Title VII and Connecticut Fair Employment Practices Act

Under both federal and state law, it is "an unlawful employment practice for an employer … to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2(a)(1) (hereafter "Title VII"); *see also* Conn. Gen. Stat. Ann. § 46a-60(b)(1).[3]  As in all Title VII discrimination claims, the Court must examine the present action under the familiar burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, the "[P]laintiff bears the initial burden of establishing a *prima facie* case of discrimination."  *Id.* at 802.  If Plaintiff successfully makes such a showing, the burden shifts to Defendant to "articulate some legitimate,

---

[3] The Connecticut Supreme Court has made clear that discrimination claims under Connecticut state law should be considered "in the same manner as federal courts evaluate federal discrimination claims." *Jackson v. Water Pollution Control Auth. of City of Bridgeport*, 900 A.2d 498, 508 n.11 (Conn. 2006).  Thus, for simplicity, this Court will examine both the state and federal claims together, while relying on federal law.  *Miller v. Hartford Fire Ins. Co.*, 652 F. Supp. 2d 220, 228 (D. Conn. 2009) (applying federal law to both state and federal employment discrimination claims and noting that "Connecticut courts look to federal employment discrimination precedent in analyzing claims brought pursuant to the Connecticut Fair Employment Practices Act. . . . This court will analyze [the plaintiff's] federal and state law claims together.")

nondiscriminatory reason for the employee's rejection." *Id.* If Defendant proffers such a reason, Plaintiff is then allowed the opportunity to show that this reason is merely pretext for a truly discriminatory motive. *Id.* at 804. This opportunity to show Defendant's reason is pretextual "merges with the ultimate burden of persuading" the factfinder that Plaintiff has been the victim of intentional discrimination. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981).

In the instant action, although Plaintiff's burden to demonstrate a *prima facie* case of discrimination is *de minimis*, *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005), Plaintiff fails to meet his burden. Even if Plaintiff were able establish a *prima facie* case of discrimination, however, Defendant has offered a legitimate non-discriminatory reason for not hiring Plaintiff. Plaintiff in turn has failed to offer any evidence showing such a reason was pretextual. Plaintiff's claim thus fails for numerous reasons.

### 1. *Plaintiff Fails to Satisfy His Prima Facie Case of Discrimination*

In order for Plaintiff to make out a prima facie case of discrimination, he must show "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). To be sure, the burden placed on Plaintiff at this stage is "*de minimis*" and requires only that the plaintiff "proffer[] admissible evidence show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995). Despite this low bar, "even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137. In the present action it is undisputed that Plaintiff is a member of a protected class, that he was qualified to be

hired for the position in question, and that he was not hired.  Thus, the only remaining question is whether this adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.

Plaintiff's claim of discrimination is primarily focused on a single email Plaintiff received from the outside recruiter who assisted Plaintiff with applying for employment with Defendant. *See* ECF No. 29-3.   Specifically, when Plaintiff inquired of the recruiter why his interview was cancelled, the recruiter stated:

> I reached out to HR and they can[']t tell me much at all besides that you are whitelisted which means not eligible to return.  That is all that HR can tell me they couldn't elaborate anymore.
>
> Potentially they would give you more info since you are the candidate?  I can[']t guarantee that but at this point it is out of my hands as there isn't anything I can do or any other info I can get.

*See* ECF No. 29-3.  At his deposition, Plaintiff further confirmed that this was the only piece of evidence he possessed to support his claims of discrimination.[4]

The Court must first address the threshold question of whether it can consider the email at all on the present motion.   Defendant argues that the email informing Plaintiff he had been "whitelisted" is inadmissible hearsay.  Because Federal Rule of Civil Procedure 56(c)(2) provides that "a party may object that the material cited to support or dispute a fact cannot be presented in

---

[4] Q: Who, specifically at Sikorsky, do you believe discriminated against you on the basis of your race, national origin or color?
A: I do not have anybody in mind because I never had any conflict or anything with anyone while I was there.
Q: Other than the use of the term, white listed, is there any other fact that makes you think you are the victim of race, national origin or color discrimination?
A: No, I did not have any information -- anything related to that.
Q: Other than denying your visitor request, did Sikorsky do anything to you that you believe was discriminatory?
A: No.
Q: Is there anything else that we haven't discussed that Sikorsky did to you that you believe was discriminatory, unfair or inappropriate?
A: No, no. ·The -- no, it's --·nothing that I can recall.
ECF No. 22-2 at 164.

a form that would be admissible in evidence," Defendant objects to the Court considering the email.  *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp*., 769 F.2d 919, 924 (2d Cir. 1985) (a party cannot rely on inadmissible hearsay in opposing a motion for summary judgment absent a showing that admissible evidence will be available at trial).

The Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1).  The hearsay rule precludes these out-of-court statements in an effort to minimize the risks of "(1) insincerity, (2) faulty perception, (3) faulty memory and (4) faulty narration, each of which decreases the reliability of the inference from the statement made to the conclusion for which it is offered." *Schering Corp. v. Pfizer Inc*., 189 F.3d 218, 232 (2d Cir. 1999), *as amended on reh'g* (Sept. 29, 1999).  Where declarants are required to testify to their statements in court, "cross-examination can help test for these four classes of error, thus allowing the fact-finder to weigh the evidence properly and to discount any that is too unreliable." *Id.*

In the present case, the recruiter's statement was not made while testifying at the current trial or hearing.  Rather, it is contained in an email that was sent more than a year before the instant action was initiated.  Further, it is clear to the Court that the entire value of the email to Plaintiff's case rests on the truth of the matter asserted therein.  Plaintiff contends, based on his interpretation of the term "whitelisted," that Defendant discriminated against him on the basis of his race and national origin.  Thus, Plaintiff is attempting to use the recruiter's email about what an employee

of Defendant allegedly said to prove that Defendant did, in fact "whitelist" him.[5]   This is quintessential hearsay.

In opposition, Plaintiff offers no legal justification why the hearsay statement may nonetheless be admissible.  Instead, Plaintiff conclusorily asserts the statement is "not hearsay" because it is "based on firsthand information provided by the defendant's HR Department that the plaintiff was 'whitelisted' and ineligible to be rehired, which was untrue, because Plaintiff's former employer, Butler International never indicated that the plaintiff was ineligible to be rehired."  ECF No. 29 at 10.  Plaintiff's circular logic does nothing to demonstrate that the statement is not hearsay, or that it is admissible as an exception to the hearsay rule.  Hearsay based on allegedly firsthand information is still hearsay, and the Court fails to see how the opinion of Butler International, Plaintiff's former employer, is in any way relevant to whether the statement is hearsay.

Plaintiff also has made no showing that admissible evidence will be available at trial.  In particular, Plaintiff has served no discovery in this case.  He has conducted no depositions.  Instead, Plaintiff has relied on his own firsthand knowledge and this singular email.  Without having conducted any discovery to even identify the person employed by Defendant who allegedly used the term "whitelisted," the Court fails to see how Plaintiff could present admissible evidence at trial.  For these reasons, the Court finds that the email informing Plaintiff that he had been "whitelisted" is inadmissible hearsay and cannot be considered in opposition to Defendant's motion for summary judgment.  *See Cardona v. Willimantic Hous. Auth.*, No. 3:19-CV-00235

---

[5] Defendant disputes Plaintiff's interpretation of the term "whitelisted," and, in any event, argues that Defendant in fact uses the term "watchlisted," rather than "whitelisted," in the context of rehiring decisions.  The chain of events in this case is reminiscent of the children's game "telephone."  An unnamed person in Defendant's human resources department spoke to a third-party recruiter, who in turn relayed the message to Plaintiff.  Defendant now contends that in relaying the message the original meaning was likely lost.  Such an unreliable chain of events is precisely the situation the hearsay rule is intended to avoid.

(MPS), 2021 WL 849020, at *11 (D. Conn. Mar. 5, 2021) (declining to consider inadmissible hearsay in ruling on a summary judgment motion in an employment discrimination case).

For the avoidance of doubt, however, even were the email admissible, it provides little support for Plaintiff's argument.  Initially, nothing about the term whitelisted appears to the Court to be inherently racially motivated.  The term is defined as "a list of approved or favored items." *Whitelist*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/white%20list (last visited August 2, 2022).  Thus, if the term were being used in its commonly accepted manner, Plaintiff would have been *approved*, and not rejected, for the position he sought.  Nothing about the email Plaintiff received in any way appears to reference his color, race, or national origin.  Nor, by Plaintiff's own admission, did any other interaction he had with Defendant in any way indicate possible discrimination.  Thus, it is clear to the Court that without further evidence, the term "whitelisted," standing on its own, simply does not allow a rational fact finder to infer a discriminatory motive.

Second, in his opposition to Defendant's motion for summary judgment, and despite stating at his deposition that there was no evidence of discrimination other than the email, Plaintiff now claims that "other employees (white men and women) of Caucasian background were treated favorably and/or allowed to return to work."   ECF No. 35 ¶¶ 5–6.  He names three specific allegedly Caucasian employees—Russel Shield, James Wannagot, and Abi Golbazi—by whom he was "replaced." *Id.* ¶ 7.  According to Plaintiff, this further demonstrates the discriminatory nature of Defendant's actions.  This argument is also unpersuasive.  Initially, it, too, is provided with no support.  Plaintiff has provided no employment records for the three Caucasian males.  There is no deposition testimony, interrogatory responses, or other evidence establishing that these individuals were hired, when they were hired, what position they were hired for, or whether they were hired

instead of Plaintiff. This lack of evidence comes as no surprise as, at oral argument, Plaintiff stated that he had never served discovery requests on Defendant seeking any information related to these individuals and instead decided to rely exclusively on Plaintiff's own knowledge of their employment situations. Despite Plaintiff's attempt, "a party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove." *Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010). Nor can a party opposing summary judgment "rely simply on conclusory statements" to defeat summary judgment, as Plaintiff attempts to do. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).

Further dooming this argument is Defendant's *evidence* submitted to rebut it. Specifically, Defendant submits the affidavit of Timothy Blake, a corporal of security for Defendant. ECF No. 33-2.[6] Blake states that there are no records that Russel Shield worked at Sikorsky during 2018 or 2019. *Id.* ¶ 5. Blake further states that Wannagot's time working for Defendant ended in 2014, and Golbazi was hired in 2002, long before Plaintiff was not hired by Defendant. *Id.* ¶¶ 6–7. Plaintiff's conclusory assertions to the contrary do not give rise to a genuine issue of material fact. Thus, based on the evidence presented to the Court, no reasonable jury could find that Plaintiff has made a showing that Defendant discriminated against him by refusing to hire him in 2019. Plaintiff has failed to prove his *prima facie* case.[7]

---

[6] The Blake Affidavit was submitted for the first time on reply, and "a party may not attempt to cure deficiencies in its moving papers by including new evidence in its reply to opposition papers." *Travelers Indem. Co. v. Excalibur Reins. Corp.*, No. 3:11-CV-1209 CSH, 2013 WL 4012795, at *2 (D. Conn. Aug. 5, 2013). Despite this general rule, Plaintiff (i) was not surprised by this evidence as his opposition argued these three employees were hired instead of Plaintiff; (ii) did not move for leave to file a sur-reply; and (iii) makes no claim that he has additional contrary evidence to introduce were he given the opportunity. Thus, the Court will consider the Blake Affidavit. *See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 227 (2d Cir. 2000).

[7] Plaintiff also points to certain allegations in the complaint as evidence for his *prima facie* case. ECF No. 29 at 9 (citing Count One, ¶¶ 5-7, of the complaint). The opponent of a summary judgment motion cannot simply point to allegations in the complaint to create an issue of material fact, however. *See Powell v. Donahoe*, 519 F. App'x 21, 22 (2d Cir. 2013) (reliance on the allegations in a pleading is insufficient to defeat summary judgment); *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (same). Thus, the Court need not analyze such contentions any further.

As Plaintiff has failed to prove his *prima facie* case, the Court need go no further in its analysis.  Nevertheless, as discussed fully below, even assuming Plaintiff could meet his burden to establish his *prima facie* case, Defendant has presented a legitimate, nondiscriminatory reason for not hiring him, which Plaintiff has failed to show was pretext for a discriminatory motive.

### 2. Defendant Has Presented a Legitimate, Nondiscriminatory Reason for Not Hiring Plaintiff

Where a plaintiff has established a *prima facie* case of discrimination, the defendant then assumes the "burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal citations omitted).  Importantly, Defendant need not prove these reasons are the actual reasons for the adverse employment action; rather, "by producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons," Defendant sustains its burden under the second step of the *McDonnell Douglas* framework.  *Id.*

Here, Defendant has met its burden of presenting such evidence.  Specifically, Defendant has presented the affidavit of Erin E. Baisley, an HR Specialist with Raytheon Technologies Corporation.  ECF No. 22-2 at 67.  Baisley states that Defendant at one time shared human resources systems with Pratt & Whitney, through their parent corporation Raytheon Technologies.  *Id.*  Baisley further states that every employee of Pratt & Whitney had, in their electronic personnel file, a box labeled "employee suitable for rehire."  *Id.*  This box was checked by default for every employee unless someone specifically unchecked the box.  *Id.*  If, however, the box was unchecked, that employee was not eligible to be rehired by any corporation owned by Raytheon Technologies, including Defendant.  *Id.*  Finally, Baisley states that Plaintiff's personnel file indicated that the box labeled "employee suitable for rehire" was in fact unchecked, thus making

him ineligible to be rehired.  *Id.* at 68.  Defendant submitted a copy of Plaintiff's personnel file, which did show the box in question as having been unchecked.  *Id.* at 72.

It is clear that Defendant has presented a legitimate nondiscriminatory reason for not hiring Plaintiff.  That is, any employee, regardless of race, color, or national origin, whose employment record reveals they are not "suitable for rehire" simply will not be hired by the Defendant.[8]  Such a "neutral no-rehire policy" has been found to constitute "a legitimate nondiscriminatory reason for refusing to rehire" a plaintiff.  *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003).  Thus, the burden shifts back to Plaintiff to prove this proffered reason was mere pretext for a truly discriminatory motivation.

### 3. Plaintiff Has Failed to Present Admissible Evidence Showing Defendant's Nondiscriminatory Reason Was Pretextual

As Defendant has "produced evidence that it acted for a non-discriminatory reason, [Plaintiff] may no longer rely on the presumption of discrimination raised by the prima facie case." *Holcomb*, 521 F.3d at 141.  Instead, he must present "evidence sufficient to permit a rational trier of fact to conclude that the adverse employment action was more likely than not motivated by unlawful discriminatory animus based on his protected status."  *Sanchez v. Conn. Nat. Gas Co*., 421 F. App'x 33, 35 (2d Cir. 2011).  As discrimination requires an investigation of the subjective intent of Defendant, "[d]irect evidence of discrimination, 'a smoking gun,' is typically unavailable."  *Holcomb*, 521 F.3d at 141.  Instead, this showing is more likely to be made using circumstantial evidence, including a showing that "the employer's stated reason for the adverse employment action is entirely pretextual."  *Id.*  The Supreme Court has been clear, however, that such a showing "does not *compel* judgment for the plaintiff."  *Reeves v. Sanderson Plumbing*

---

[8] Plaintiff does not argue that the "suitable for rehire" box was unchecked based on a discriminatory reason.  Instead, Plaintiff argues the box, to the extent it exists, was not unchecked.  ECF No. 30, ¶¶ 8–10.  Thus, the Court has no occasion to examine the intent behind Defendant's decision to uncheck the "suitable for rehire" box.

*Prod., Inc.*, 530 U.S. 133, 146 (2000) (emphasis in original). Rather, the ultimate question for the Court at this step is whether a reasonable jury could find, based on all the evidence, that Defendant had a discriminatory motive in failing to hire Plaintiff. *St. Mary's Honor Ctr.*, 509 U.S. at 511.

Here, it is clear that Plaintiff has neither produced evidence to show Defendant's reason is pretext, nor produced evidence that would allow a reasonable jury to conclude Defendant's actions were motivated by improper discrimination. First, Plaintiff's attempts to show Defendant's reason for not hiring him was pretextual rests entirely on conclusory statements of fact. For instance, Plaintiff states that "there is no basic employment tab for all employees at Pratt & Whitney . . . that contains a clickable box labeled 'Employee Suitable for Rehire.'" ECF No. 35 ¶ 24. Plaintiff goes on to say that such a box is not automatically checked for rehire, and that even if such a box existed and were unchecked, Plaintiff would still be eligible to be rehired." *Id.* ¶¶ 25–26. Such statements, however, are provided without citation to any evidence. Conclusory statements unsupported by the record, such as Plaintiff's statements here, are not enough to create a material issue of fact requiring denial of summary judgment. *See Gan*, 996 F.2d at 532; *Hicks*, 593 F.3d at 167; *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 99 (2d Cir. 2001) (affirming grant of summary judgment where Plaintiffs "failed to produce any evidence, other than conclusory statements unsupported by the record, to rebut the legitimate, nondiscriminatory reasons offered by Defendant, let alone evidence that could reasonably support a verdict in their favor"); *Woods v. Ruffino*, 8 F. App'x 41, 42 (2d Cir. 2001) ("[r]eliance upon conclusory statements or mere allegations is not sufficient to defeat summary judgment").

Further, as discussed above, Plaintiff's argument that a genuine issue of material fact exists as a result of the email from a third-party recruiter telling him he was whitelisted and the purported hiring of white males instead of Plaintiff is unavailing. No reasonable jury could find this evidence

17

sufficient to show Defendant had a discriminatory motive in not hiring Plaintiff. Thus, Defendant's motion for summary judgment as to Count One, Plaintiff's claims under Title VII of the Civil Rights Act and the Connecticut Fair Employment Practices Act, is GRANTED.

### B. Count Two: Intentional Infliction of Emotional Distress

Plaintiff next contends that Defendant's actions in not hiring him make Defendant liable for intentional infliction of emotional distress. A plaintiff claiming intentional infliction of emotional distress ("IIED") must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 757 A.2d 1059, 1062 (Conn. 2000) (internal citations and quotation marks omitted). "Mere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress." *Huff v. West Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998). In its motion for summary judgment, Defendant focuses on the third element, that the conduct be extreme and outrageous. Therefore, the Court will begin—and because it determines Defendant is correct—end its analysis there.

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." *Appleton*, 757 A.2d at 1062 (citation omitted). Regarding the outrageousness of a defendant's conduct, the Connecticut Supreme Court has explained:

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found

only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* (citations and internal quotation marks omitted) (quoting W. Prosser & W. Keeton, Torts (5th Ed.1984) § 12, p. 60, and 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)). "Connecticut courts hold that insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress," particularly in an employment context.  *Miner v. Cheshire*, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) (citations omitted).  Additionally, in Connecticut, "an employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner."  *Id.*; *Ferrante v. Capitol Reg'l Educ. Council*, No. 3:14-CV-00392-VLB, 2015 WL 1445206, at *9 (D. Conn. Mar. 30, 2015) (finding that, among other things, failure to hire the plaintiff was not sufficiently extreme and outrageous to support an IIED claim).  Even a plaintiff's claim that an employer once used a racial slur does not allow a plaintiff to maintain a claim for intentional infliction of emotional distress.  *See Brown v. Mulcahy*, No. CV065001276S, 2007 WL 2363303, at *4 (Conn. Super. Ct. July 24, 2007); *Burr v. Howell*, No. CV020464225S, 2003 WL 21675848, at *5 (Conn. Super. Ct. June 25, 2003).

It is clear to the Court that Plaintiff's claims for intentional infliction of emotional distress must be dismissed.  Initially, as with his claim for discrimination, Plaintiff offers no evidence to support his claim for intentional infliction of emotional distress.  Instead, he simply lists the elements of the tort while using phrases such as "there is no doubt" that Defendant's conduct satisfies the elements.  As discussed above, such conclusory statements cannot defeat an

adequately supported motion for summary judgment.  *See Gan,* 996 F.2d at 532*; Hicks,* 593 F.3d at 167.  Thus, the Court need not analyze such contentions any further.   Here, however, even if the Court were to find the term "whitelist" was somehow a racially derogatory term—which, to be clear, the Court has not—Plaintiff's claims would still fail.  *See Brown*, 2007 WL 2363303, at *4; *Burr*, 2003 WL 21675848, at *5.  Beyond these evidentiary issues, and perhaps tellingly, Plaintiff also cites no case law demonstrating the alleged actions at issue in the present case are enough to satisfy the extreme and outrageous element of a claim for intentional infliction of emotional distress, nor has the Court located any.  In fact, as discussed above, the case law appears to indicate the opposite.  Thus, it is clear that Plaintiff has failed to present admissible evidence which would allow a reasonable jury to conclude that Defendant's conduct was so extreme and outrageous as to exceed all bounds of decency tolerated by society.

Therefore, Defendant's motion for summary judgment as to Count Two, Plaintiff's claim for intentional infliction of emotional distress, is GRANTED.

C.   Negligent Inflicton of Emotional Distress

Finally, Plaintiff claims that Defendant's actions also constitute negligent infliction of emotional distress.  For Plaintiff to succeed on a claim of negligent infliction of emotional distress, he must show "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress."  *Carrol v. Allstate Ins. Co*., 815 A.2d 119, 127 (Conn. 2003).  In the employment context, "only conduct occurring in the process of termination can be a basis for recovery for negligent infliction of emotional distress."  *Brunson v. Bayer Corp*., 237 F. Supp. 2d 192, 208 (D. Conn. 2002).  Further still, "the mere termination of employment, even where it is

wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." *Parsons v. United Techs. Corp., Sikorsky Aircraft Div.*, 700 A.2d 655, 667 (Conn. 1997).[9]

Here, it is undisputed that the conduct at issue was Defendant's failure to hire Plaintiff, not its decision to terminate his employment.  The law of Connecticut is unsettled as to whether a failure to hire is considered a termination allowing for a negligent infliction of emotional distress claim.  *Compare Pascal v. Alternative Servs. of Conn., Inc.*, No. 547184, 1998 WL 886540, at *2 (Conn. Super. Ct. Dec. 8, 1998) (analyzing failure to hire case under same standard as case involving termination), *with Dionne v. Trinity Health of New England, Corp., Inc.*, No. HHD-CV20-6128083-S, 2022 WL 1020385, at *2 (Conn. Super. Ct. Feb. 10, 2022) (holding a failure to hire claim cannot be the basis for negligent infliction of emotional distress).

Regardless, even if a claim for negligent infliction of emotional distress could proceed based on a failure to hire, the conduct at issue here does not support such a cause of action.  Once again, the Court notes that Plaintiff has presented no evidence other than conclusory allegations about Defendant's conduct creating an unreasonable risk of foreseeable harm, and that the foreseeable harm did in fact materialize.  ECF No. 29 at 15.  In fact, termination, even for discriminatory reasons, does not constitute negligent infliction of emotional distress.  *Miner*, 126 F. Supp. 2d at 198.  As Plaintiff has claimed no unreasonable action, other than arguably discriminatory behavior, Plaintiff has failed to satisfy the elements of a claim for negligent infliction of emotional distress.  Defendant's motion for summary judgment as to Count Three is therefore GRANTED.

---

[9] Some courts in this district have imposed a requirement that the employer's conduct must be humiliating, extreme, or outrageous to state a claim for negligent infliction of emotional distress.  *See, e.g., Miner*, 126 F. Supp. 2d at 197; *Kleftogiannis v. Inline Plastics Corp.*, 411 F. Supp. 3d 216, 228 (D. Conn. 2019).  As neither the Connecticut Supreme Court nor the Connecticut Appellate Court has adopted this requirement, the Court will decline to do so here.

IV.     **CONCLUSION**

For the reasons described herein, Defendant's motion for summary judgment is GRANTED in full.  The Clerk of Court is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 2nd day of August, 2022.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE